# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

CHANCE ROWE                                                                                        PLAINTIFF
ADC #169022

V.                                      No. 5:19-CV-207-BSM-JTR

STEVEN STRINGFELLOW,
Doctor, Delta Regional Unit                                                                        DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Miller may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

In his *pro se* § 1983 Complaint, Amended Complaint, and second Amended Complaint, Plaintiff Chance Rowe ("Rowe") alleges that Defendant Doctor Steven Stringfellow ("Dr. Stringfellow") was deliberately indifferent to his serious medical needs when he refused to provide a mouthguard for Rowe's "habitual night

grinding" on March 20, 2019. *Doc. 2; Doc. 6; Doc. 20.* He further alleges that Dr. Stringfellow's decision to deny him a mouth guard was based on "healthcare/dental *policy* that focuses upon budgetary rationale not on the care or wellbeing of the patient." *Doc. 20 at 4* (emphasis added). Accordingly, he brings claims against Dr. Stringfellow in both his personal and official capacities. *Gladden v. Richbourg*, 759 F.3d 960, 968 (8th Cir. 2014) (Official-capacity liability occurs where the constitutional injury is caused by a government's policy or custom). For relief, Rowe seeks the provision of a mouth guard and repair of his damaged teeth. *Doc. 6 at 6; Doc. 20 at 4*.

On February 16, 2021, Dr. Stringfellow filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Facts, arguing that the claims against him should be dismissed because Rowe failed to demonstrate that Dr. Stringfellow acted with deliberate indifference to his serious medical needs. *Doc. 37; Doc. 38; Doc. 39*. Although notified of his right to file a Response *and* a separate Statement of Disputed Facts, Rowe filed only a Statement of Disputed Facts (*Doc. 41*), to which Dr. Stringfellow has filed a Reply (*Doc. 42*).

## II. Facts

Before addressing the merits of Dr. Stringfellow's Motion, the Court will set forth the relevant facts, in the light most favorable to Rowe:[1]

1. Rowe testified that he was prescribed a temporary mouthguard by his family dentist, Dr. Andrew Walker, at age twelve. Rowe Dep. 23:8–9 (*Doc. 38-2 at 23*). By Rowe's estimation, the last time he had a dental examination with Dr. Walker was in March or April of 2017. *Doc. 38-2 at 40–41*.

2. Rowe was supposed to have a more durable mouthguard molded to fit his teeth, but, because he "was always in trouble" and "moved around a lot," he never had the permanent mouthguard fitted. Instead, he continued to wear the temporary mouthguard every night until he was seventeen years old. *Doc. 38-2 at 23–25*.

3. At seventeen years old, Rowe was booked into a Juvenile Detention Center ("JDC"). He did not have his mouthguard for the first two to three months, but eventually nurses at the JDC allowed Rowe's mother to bring him a mouthguard. *Doc. 38-2 at 25*. He continued to wear his temporary mouthguard for the remainder of his time in the JDC—approximately seven months. *Doc. 38-2 at 29*.

---

[1] "In deciding a motion for summary judgment, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion…so long as those facts are not so blatantly contradicted by the record that no reasonable jury could believe them." *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir. 2007) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (internal quotation marks, brackets, and ellipsis omitted).

4.      On January 25, 2018, Rowe was transferred from the JDC to the ADC, and his mouthguard was taken away from him. *Doc. 38-2 at 29–30*. An intake dental exam was performed, and no signs of occlusal wear or bruxism were noted. *Doc. 41 at 3–4*.

5.      Rowe was incarcerated at the Delta Regional Unit of the ADC from August 10, 2018 to June 5, 2019. *Doc. 38-2 at 17*. During that time, he was seen by Defendant Dr. Stringfellow twice. *Doc. 38-2 at 18*. The first visit was for complaints of a cracked filling on a left lower tooth and a chipped front tooth. *Doc. 38-2 at 35*. Dr. Stringfellow told Rowe that the filling was not cracked but placed "some type of glue stuff or filler" on the tooth.[2] *Doc. 38-2 at 18; Doc. 38-2 at 35*. Rowe agreed with Dr. Stringfellow's opinion that the minor chip to his front tooth did not cause any damage. *Doc. 38-2 at 35*.

6.      On March 6, 2019, after more than a year without his mouthguard, Rowe placed a medical request that stated: "I would like to see a dentist because I need a mouth guard due to grinding by teeth really bad." *Doc. 38-1 at 1*.

7.      Rowe was examined by Defendant Dr. Stringfellow for a second and final time on March 20, 2019. Rowe, who was twenty years old at the time, presented for complaints of teeth grinding (also known as "bruxing" or "bruxism") and told

---

[2] The record contains no medical documentation related to this visit, only Rowe's deposition testimony. Consequently, the date and exact nature of the treatment provided by Dr. Stringfellow are unknown.

Dr. Stringfellow that he needed a prescription for a mouthguard. *Doc. 38-2 at 31–32*. According to Rowe, Dr. Stringfellow saw signs of grinding on the same left lower filling he had treated previously. Dr. Stringfellow "drilled on the upper tooth" to try to prevent Rowe from grinding on that filling. *Id. at 32*. Rowe declined a prescription for ibuprofen because it was inefficient and "really didn't work." *Id. at 33*.

8. According to the medical notes for the March 20 visit, Dr. Stringfellow found that Rowe was not in apparent distress and advised him that "ADC policy will not allow for mouth guards/bruxing devices." *Doc. 38-1 at 1*.

9. On April 30, 2019, Rowe was seen by Dr. Stanley Brawley, a non-party provider, because a filling on one of his back lower left teeth had "pop[ped] out." *Doc. 38-1 at 1*. Dr. Brawley provided medical treatment for that tooth, but made no mention of teeth grinding, or the need for a mouth guard. *Id.*

10. On June 21, 2019, Rowe filed his Complaint in this matter, alleging that Dr. Stringfellow was deliberately indifferent to his serious medical needs when he declined to prescribe him a mouthguard at the March 20, 2019 visit.[3] *Doc. 2; Doc. 6; Doc. 20*. Rowe alleged that, since coming to the ADC, he had "crushed a filling and chipped a tooth." *Doc. 6 at 4*.

---

[3] Rowe also brought claims against Warden Darrell Golden, Deputy Warden Linda Dykes, ADC Director Wendy Kelley, Health Services Administrator Jennifer Handly, and Doe defendants, which have since been dismissed. *See Doc. 8; Doc. 33*.

5

11. On July 11, 2019, Dr. Stringfellow filed an addendum to the March 20, 2019 visit stating that the "[t]he request for a 'mouth guard' is declined based on lack of medical necessity." *Doc. 38-1 at 2*.

12. Attached to his second Amended Complaint, Rowe submitted a July 23, 2019 letter bearing the signature of his family dentist, Dr. Walker, that stated:

> Our patient, Chance Rowe, needs to wear his occlusal guard on night [sic] to prevent extensive wear on his anterior teeth. His anterior upper teeth have extensive composite fillings that need to be protected against breakage by wearing his occlusal guard. Chance has evidence of clinching and griding on his teeth. If he does not have access to his nightguard, he surely will have broken fillings and teeth eventually that will need to be repaired.

*Doc. 20 at 6*.

13. On August 28, 2019, Rowe was seen by Dr. Jessica Breedlove for sensitivity on the same left lower tooth that had a filling pop out. Rowe complained that he thought the tooth may have cracked but Dr. Breedlove found no fracture. She provided no treatment and counseled Rowe that sensitivity is normal for fillings. *Doc. 38-1 at 2*. Dr. Breedlove made no note of teeth grinding or the need for a mouthguard.

14. On February 11, 2020, Rowe was again seen by Dr. Breedlove. He complained of grinding his teeth and requested a mouthguard. Dr. Breedlove noted

"minimal wear to teeth" and found that a "mouthguard is not needed by this patient and also against ADC policy." *Doc. 38-1 at 3*.

15.   Susan McDonald, D.D.S., an ADC dentist employed by Wellpath, reviewed Rowe's deposition and dental records from January 25, 2018 to February 5, 2021. She opined in an affidavit that: (1) the medical records did not "reflect any serious occlusion or a clinical need for a mouth guard"; and (2) the dental care treatment provided was medically appropriate. *Doc. 38-3*.

### III.  Discussion

Dr. Stringfellow argues that he is entitled to summary judgment because Rowe has failed to show he was deliberately indifferent to Rowe's serious medical needs. The Court agrees. For the reasons explained below, Defendant Stringfellow's Motion for Summary Judgment (*Doc. 37*) should be granted.[4]

### A.   Personal Capacity Claim Against Dr. Stringfellow

To prevail on his claim of deliberate indifference against Dr. Stringfellow in his personal capacity, Rowe must prove that: (1) he had an objectively serious need for medical care for bruxism; and (2) Dr. Stringfellow subjectively knew of, but

---

[4]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

deliberately disregarded, that serious medical need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016).

The Court has not found a single case where bruxism with *minimal* wear to teeth was found to be a *serious* medical need. However, under Eighth Circuit law, a medical need is objectively serious if it has been "diagnosed by a physician as requiring treatment" or if it is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018).

Viewing the facts in the light most favorable to Rowe, Dr. Walker diagnosed him with bruxism *eight* years prior to Rowe's March 20, 2019 visit with Dr. Stringfellow and determined he needed treatment in the form of a mouthguard. Setting aside any evidentiary issues, and the fact that Dr. Walker had not personally examined Rowe for more than two years, Dr. Walker's July 23, 2019 letter indicates that he believed Rowe needed continued treatment for the condition. Accordingly, the Court assumes, *without deciding*, that Rowe's bruxism constituted an objectively serious medical need.

Even so, Rowe's deliberate indifference claim against Dr. Stringfellow fails because nothing in the medical record or Rowe's deposition recitation of the March 20, 2019 visit indicates that Dr. Stringfellow actions were "so inappropriate as to

evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014).

Deliberate indifference, which goes well beyond negligence or gross negligence, "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

At the March 20 visit, Rowe presented with no apparent distress, and Dr. Stringfellow treated Rowe's minimal signs of grinding on the back lower left tooth[5] by creating more space on the top tooth.[6] Dr. Stringfellow further offered a prescription of ibuprofen, which was refused. No reasonable jury could find that these actions amounted to "callousness" or that Dr. Stringfellow was deliberately refusing to provide Rowe with medical care.

Dr. Stringfellow was not required to provide Rowe's preferred medical treatment, i.e., a mouthguard. Rather, Dr. Stringfellow was allowed to rely upon his own medical judgment to provide the treatment he deemed appropriate based on his

---

[5] The note from Rowe's family dentist, Dr. Wilson, recommended a mouthguard based on concerns of grinding on the *anterior upper* teeth.

[6] Based on Rowe's description of the visit, it appears that Dr. Stringfellow performed an occlusal adjustment procedure, which is a known treatment for management of bruxism. *See* Shilpa Shetty et al., *Bruxism: a literature review*, J. OF INDIAN PROSTHODONTIC SOC'Y, Sept. 2010, at 141–48 (available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3081266/) (last visited Aug. 13, 2021).

knowledge of Rowe's condition. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) (a showing of deliberate indifference requires more than a mere disagreement with treatment decisions).

Further, Dr. Stringfellow has produced the *sworn* declaration of Dr. McDonald who opined that the medical care provided was adequate; and Dr. Breedlove, several months after the March 20 visit, agreed that a mouthguard was not medical necessary for Rowe's condition. The *unsworn* letter from Rowe's family dentist is not enough to create a factual dispute regarding the appropriateness of the treatment provided, or whether Dr. Stringfellow *subjectively* knew of, but deliberately disregarded Rowe's serious medical needs.[7]

Finally, although deliberate indifference can include the *intentional* interference with a prescribed treatment, *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995), there is no indication from the record that Dr. Stringfellow had direct knowledge of an *active* mouthguard prescription or that he *intentionally* denied Rowe such treatment. *Cf. Shipp v. Murphy*, No. 20-2703, at *11–12 (8th Cir. Aug.

---

[7] Although the Court may not weigh the evidence or make credibility determinations at the summary judgment stage, the "mere existence of a scintilla of evidence in support of plaintiff's position" is not enough to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Scott v. Harris*, 550 U.S. 372, 380–81 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

13, 2021) (Doctor's refusal to "enter any orders" after inmate's prescribed orthotic shoes were taken away by prison officials did not amount to deliberate indifference).

Because Rowe has presented no evidence that Dr. Stringfellow was deliberately indifferent to his "habitual night grinding," Dr. Stringfellow is entitled to summary judgment as a matter of law in his personal capacity.

### B. Official Capacity Claim Against Dr. Stringfellow

The claim against Dr. Stringfellow in his official capacity is equivalent to a claim against the entity for which he works, WellPath. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Without a constitutional violation by Dr. Stringfellow, there can be no liability on the part of Wellpath. *Smith v. Kilgore*, 926 F.3d 479, 486 (8th Cir. 2019); *Schoettle v. Jefferson County*, 788 F.3d 855, 861–62 (8th Cir. 2015) ("We have long held that neither municipal nor supervisory liability may attach in section 1983 actions unless individual liability is first found on an underlying substantive claim.") Accordingly, summary judgment should also be granted for Dr. Stringfellow, in his official capacity.

### IV. Conclusion

Rowe failed to demonstrate that Dr. Steven Stringfellow acted with deliberate indifference to his serious medical needs. IT IS THEREFORE RECOMMENDED THAT:

1. Dr. Stringfellow's Motion for Summary Judgment (*Doc. 37*) be GRANTED;

2. All claims against Dr. Stringfellow, in his personal and official capacities, be DISMISSED, with prejudice; and

3. This case be dismissed and judgment be entered in favor of Defendant.

DATED this 16th day of August, 2021.

                              */s/ J. Thomas Ray*
                            UNITED STATES MAGISTRATE JUDGE